|  |  |  |
|---|---|---|
| ENVOY CORPORATION and FEDERAL INSURANCE COMPANY, | ) ) ) ) | CASE NO.:   3-03-0539 |
| Plaintiffs, | ) ) ) | Judge Wiseman Magistrate Judge Griffin |
| v. | ) ) | Jury Demand |
| QUINTILES TRANSNATIONAL CORP., | ) ) ) ) |  |
| Defendant. | ) ) ) |  |
| QUINTILES TRANSNATIONAL CORP., | ) ) ) |  |
| Counter-Plaintiff | ) ) ) |  |
| v. | ) ) |  |
| ENVOY CORPORATION, FEDERAL INSURANCE COMPANY, and WEBMD CORP., | ) ) ) ) |  |
| Counter-Defendants. | ) ) |  |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL INSURANCE COMPANY'S, ENVOY CORPORATION'S, AND WEBMD CORP.'S MOTION TO DISMISS

## I.     INTRODUCTION

Quintiles Transnational Corp. ("Quintiles") attempts to assert counterclaims against

Federal Insurance Company ("Federal"), Envoy Corporation ("Envoy"), and Envoy's parent

company, WebMD Corp. ("WebMD"), despite clear rulings by this Court that have already twice

rejected – on the merits after cross-motions for summary judgment – the very allegations upon

which Quintiles' counterclaims are based. These rulings, which are fatal to Quintiles' counterclaims, mandate dismissal of each and every counterclaim asserted by Quintiles.

Federal and Envoy brought this action against Quintiles based on Quintiles' refusal to pay Envoy the costs to defend and settle the Envoy Securities Litigation despite Quintiles' unconditional pledge in a Merger Agreement to indemnify Envoy "from any and all Liabilities arising out of the . . . Envoy Securities Litigation." In the Complaint, Envoy and Federal, as the contractual subrogee to Envoy's rights, asserted breach of contract claims against Quintiles. By order and a thirty-three page memorandum opinion, this Court granted Federal's motion for summary judgment (and denied Quintiles' motion for summary judgment) finding that Quintiles breached the clear and unambiguous Indemnity Provision of the Merger Agreement. In so holding, this Court rejected Quintiles' defenses: (1) expressly finding that Quintiles' obligation to indemnify Envoy was primary to that of Envoy's insurer, Federal; (2) rejecting arguments by Quintiles that certain provisions of the Merger Agreement had been breached; and (3) rejecting Quintiles' reformation claim. This Court rejected Quintiles' defenses again when it denied Quintiles' motion for reconsideration. It is these same defenses that form the basis of Quintiles' counterclaims.

In spite of these rulings, Quintiles asserts counterclaims for breach of contract, bad faith and unfair business practices against Envoy and its parent company, WebMD, counterclaims for tortious interference with contract and unfair business practices against Federal, and counterclaims for reformation and declaratory relief against Envoy, WebMD and Federal. As is demonstrated below, given this Court's prior rulings, none of Quintiles' counterclaims states a claim upon which relief can be granted. Thus, each of Quintiles' counterclaims must be dismissed.

## II.   LEGAL ARGUMENT

### A.   None of Quintiles' Counterclaims States A Claim Upon Which Relief Can Be Granted

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court determines whether the plaintiff can prove any set of facts that would entitle it to relief.  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001).[1]  The Court, however, is not required to "'accept as true legal conclusions or unwarranted factual inferences.'"  S&M Brands, Inc. v. Summers, 393 F. Supp. 2d 604, 611 (M.D. Tenn. 2005) (quoting Bovee, 272 F.3d at 361).  See also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (recognizing that on a motion to dismiss, the Court "need not accept as true legal conclusions or unwarranted factual inferences").  Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice.  Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002);  Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987);  VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP, 348 F. Supp. 2d 255, 263 (S.D.N.Y. 2004).  Indeed, a complaint will be dismissed pursuant to Rule 12(b)(6) if on the face of the complaint there is an insurmountable bar to relief.  S&M Brands, 393 F. Supp. 2d at 611-12 (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 698 (6th Cir. 1978)).

In addition to the allegations in the complaint, the Court may also consider other materials that are integral to the complaint, that are public records, or that are otherwise appropriate for the taking of judicial notice.  Wyser-Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d

---

[1] Nothing contained herein is intended nor should it be construed as an admission, express or implied, as to the truth of the allegations addressed herein.

553, 560 (6th Cir. 2005). See also Lee v. Dell Products, L.P., 236 F.R.D. 358, 361 (M.D. Tenn. 2006) (recognizing that on a motion to dismiss under Rule 12(b)(6), the Court may consider public records and any matters of which a court may take judicial notice, without converting a motion to dismiss into a motion for summary judgment); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (recognizing that on a motion to dismiss under Rule 12(b)(6), the Court may consider matters of public records including orders and other papers on file with the Court). Under the Federal Rules of Evidence, courts may take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Lee, 236 F.R.D. at 361 (quoting Fed. R. Evid. 201(b)). Specifically, the Court may take judicial notice of papers on file with the Court. Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th Cir.1980).

### 1. Quintiles Cannot State Claims for Breach of Contract

Quintiles' counterclaims for breach of contract against Envoy and WebMD are based on allegations that Envoy and WebMD breached certain provisions of the Merger Agreement – the "non-assignment," "no rights in third parties," and/or "maintenance of insurance" provisions. (Doc. No. 73 (Quintiles' Answer and Counterclaims), ¶¶ 52(i) – 52(vii) and 69(i) – 69(vii)). Quintiles also alleges, in support of its breach of contract counterclaims, that Envoy and WebMD breached the Merger Agreement by taking the position that the Indemnity Provision is primary to the Federal Policy – a position that Quintiles alleges is "inconsistent" with the Merger Agreement. (Doc. No. 73, ¶¶ 52(ix) and 69(viii)).

Quintiles cannot state counterclaims for breach of contract against either Envoy or WebMD for several reasons. First, Quintiles' allegations that Envoy breached the non-assignment provision of the Merger Agreement by "asserting that Federal has certain rights under the Merger Agreement," and because "Federal bases its claims on subrogation, which is a form of equitable assignment," (Doc. No. 73, ¶¶ 52(vi)), cannot support a claim for breach of contract. These allegations and the legal conclusion upon which they are based are directly refuted by this Court's May 10, 2006 Memorandum Opinion granting Federal's motion for summary judgment ("Memorandum Opinion"). In the Memorandum Opinion, this Court determined that "the non-assignment provision of the Merger Agreement has no bearing on Federal's right to recover the costs paid on behalf of Envoy under the Federal Policy." (Doc. No. 84 at 11).[2] In this regard, this Court concluded:

> Despite Quintiles' assertion to the contrary, it is well settled under both Tennessee and North Carolina law that a party's rights derived by subrogation, whether by contract or operation of law, and the remedies available to subrogee are different and distinct from a party's rights and available remedies derived by assignment.

(Doc. No. 84 at 14 – 15). In so concluding, this Court necessarily found that Envoy did not breach the non-assignment provision of the Merger Agreement because Federal proceeded against Quintiles based on its subrogation rights under the Federal Policy. Consequently, Quintiles' allegations that Envoy breached the non-assignment provision of the Merger Agreement are directly refuted by the findings in this Court's Memorandum Opinion. As such, these allegations cannot support a counterclaim for breach of contract against Envoy.[3]

---

[2] The Memorandum Opinion (Doc. No. 84) is attached as Exhibit A to the Request for Judicial Notice filed concurrently herewith.

[3] This conclusion, as well as the other conclusions demonstrated throughout this motion, further the principle underlying the "law of the case" doctrine – to limit relitigation of an issue once it has been decided in an earlier stage of the proceedings. Bowles v. Russell, 432 F.3d 668,

Second, Quintiles' allegations that WebMD and Envoy breached the "no rights in third parties" provision of the Merger Agreement by taking the position that Quintiles' obligation to indemnify Envoy for the Envoy Securities Litigation under the Indemnity Provision is primary to the Federal Policy, (see Doc. No. 73, ¶¶ 69(iii) and 52(iii)), cannot support a claim for breach of contract given this Court's express finding in the Memorandum Opinion that Quintiles' obligation under the Indemnity Provision is indeed primary:

> [T]he Court concludes that Quintiles' obligation to indemnify Envoy under the Indemnity Provision is primary and unconditional, and Quintiles' refusal to pay the defense and settlement costs beyond the $500,000 insurance deductible is clearly a breach of that agreement. Therefore, Federal is entitled to judgment as a matter of law and to recover the approximately $11.5 million paid out on behalf of Envoy.

(Doc. No. 84 at 32). Certainly, allegations that Envoy and WebMD took positions that this Court has found to be consistent with the meaning of the Merger Agreement cannot support a counterclaim for breach of contract against either Envoy or WebMD.

---

676 (6th Cir. 2005) (explaining that the "law of the case" doctrine "is similar [to issue preclusion or collateral estoppel] in that it limits relitigation of an issue once it has been decided, but the law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages" and "generally discourages courts from reconsidering determinations that the court made in an earlier stage of the proceedings"). See also Christianson v. Colt Indus. Op. Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (explaining that the doctrine promotes finality and efficiency of the judicial process by protecting against the relitigation of settled issues); Rouse v. DaimlerChrysler Corp. UAW Non-Contrib. Plan, 300 F.3d 711, 715 (6th Cir. 2002) (explaining that the doctrine operates such that "findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation"); Petition of U.S. Steel Corp., 479 F.2d 489, 494 (6th Cir. 1973) (explaining that the law of the case doctrine precludes a court from "reconsideration of identical issues"). Thus, any matter decided previously by this Court in the Memorandum Opinion issued in conjunction with granting Federal's motion for summary judgment still stands. This is especially so since, in denying Quintiles' motion for reconsideration, this Court has determined that its findings in connection with Federal's motion for summary judgment should not be reconsidered. See United States v. Todd, 920 F.2d 399, 403 (6th Cir. 1990) ("[i]t is within the sole discretion of a court" to determine whether its findings should be reconsidered).

Third, Quintiles' allegations that Envoy and WebMD breached the maintenance of insurance provision cannot support a claim for breach of contract. In support of its counterclaims against Envoy and WebMD for breach of contract, Quintiles alleges that Envoy and WebMD breached the maintenance of insurance provision by taking the position that the Indemnity Provision is primary to the Federal Policy. (Doc. No. 73, ¶¶ 52(ix) and 69(v – viii)). Quintiles alleges that such a position is "inconsistent" with the Merger Agreement, which, according to Quintiles, required Envoy and WebMD to maintain the Federal Policy as the primary coverage for the Envoy Securities Litigation. (Doc. No. 73, ¶¶ 52(ix) and 69(v – viii)). As demonstrated in the preceding paragraph, this Court has expressly found that the Indemnity Provision is indeed primary to the Federal Policy. (Doc. No. 84 at 32). Accordingly, allegations that Envoy and WebMD were required to "maintain" the Federal Policy as the "primary" coverage for the Envoy Securities Litigation and that Envoy and WebMD took positions "inconsistent" with the Merger Agreement are directly refuted by this Court's findings in the Memorandum Opinion. As such, these allegations cannot support counterclaims for breach of contract against either Envoy or WebMD.[4]

Fourth, Quintiles' allegations regarding the positions allegedly taken by Envoy and WebMD regarding Federal's right to enforce the Indemnity Provision cannot support claims that Envoy and WebMD breached the Merger Agreement. This Court has ruled that Federal's right

_____

[4] Any attempt by Quintiles to allege breach of the maintenance of insurance provision on the part of Envoy or WebMD by not "maintaining" the Federal Policy would likewise fail. As this Court stated in the Memorandum Opinion, "Quintiles concedes that the [sic] Federal's Policy at issue in this case had expired prior to the merger. Based on the undisputed facts, it is clear that Envoy could not 'maintain' the Federal Policy, as it had already expired and been replaced by a subsequent policy." (Doc. No. 84 at 31).

to enforce the Indemnity Provision against Quintiles arises from the subrogation clause in the

Federal Policy – not the Merger Agreement:

> [T]he Court finds that Federal is entitled to bring its claims against Quintiles
> based on its right of conventional subrogation under the Federal Policy . . . .
> Based on the subrogation provision of the Federal Policy, it is clear that Federal is
> entitled to conventional subrogation to Envoy's claims against Quintiles for
> breach of the Indemnity Provision of the Merger Agreement and to recover the
> costs it incurred on behalf of Envoy . . . .

(Doc. No. 84 at 15). This same ruling precludes Quintiles from alleging two essential elements

of a breach of contract claim – causation and damages. See Poor v. Hill, 530 S.E.2d 838, 843

(N.C. App. Ct. 2000) (recognizing that plaintiff must show damages resulting from the breach to

state a claim for breach of contract).[5] Because this Court has found that Federal's rights against

Quintiles were derived exclusively from the Federal Policy, any purported acts on the part of

Envoy or WebMD could not (and did not) affect Federal's right to recover from Quintiles the

amount it paid to defend and settle the Envoy Securities Litigation. In other words, regardless of

what position (if any) Envoy or WebMD may have taken about Federal's rights, or any other acts

(if any) by Envoy or WebMD, Federal had independent rights against Quintiles that were

unaffected by those positions. As recognized by this Court, Federal proceeded (and prevailed)

against Quintiles independently of Envoy and WebMD. Thus, even if Envoy and WebMD

breached the Merger Agreement, which they did not, it is impossible for Quintiles to show any

resulting damage. In other words, Federal's claim would have succeeded regardless of any

comment or action (or failure to comment or act) by Envoy or WebMD.

    For these reasons Quintiles cannot state counterclaims for breach of contract against

either Envoy or WebMD.

---

[5] A copy of Poor v. Hill, 530 S.E.2d 838 (N.C. App. Ct. 2000) is attached hereto as Exhibit
A.

## 2. Quintiles Cannot State Claims For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Absent a breach of contract, there can be no claim for breach of the implied covenant of good faith and fair dealing. See, e.g., Eli Research, Inc. v. United Commc'ns Group, LLC, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004) (applying North Carolina law) (recognizing that a claim for breach of the implied covenant of good faith cannot exist absent a breach of contract); Shalford v. Shelly's Jewelry, Inc., 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (applying North Carolina law) ("Plaintiffs' fourteenth cause of action for breach of the covenant of good faith and fair dealing is 'part and parcel' of their claim for breach of contract"); Polygenex Int'l, Inc. v. Polyzen, Inc., 515 S.E. 2d 457, 461 (N.C. Ct. App. 1999) ((1) affirming lower court's sanction against plaintiff for filing claim for breach of covenant of good faith because absent a breach of the contract; and (2) agreeing with defendants that "'[a]bsent a breach of actual provisions of the Separation Agreement, . . . breach of the implied covenant of good faith does not state a proper cause of action'").[6] As demonstrated in Section II.A.1, *supra*, Quintiles cannot state counterclaims for breach of contract against Envoy or WebMD. For this reason, Quintiles' counterclaims for breach of the implied covenant of good faith and fair dealing against Envoy and WebMD necessarily fail.

In addition (and separate and apart from the above threshold bar to Quintiles' counterclaims for breach of the implied covenant), Quintiles' counterclaims for breach of the implied covenant of good faith and fair dealing against Envoy and WebMD are based on allegations that Envoy and WebMD took the position that the Indemnity Provision was primary to the Federal Policy and that Envoy and WebMD assisted Federal in its attempts to demonstrate

---

[6] A copy of Polygenex Int'l, Inc. v. Polyzen, Inc., 515 S.E. 2d 457 (N.C. Ct. App. 1999) is attached hereto as Exhibit B.

Case 3:03-cv-00539   Document 124   Filed 12/29/06   Page 9 of 22 PageID #: 1623

that the Quintiles Indemnity is primary to the Federal Policy. (Doc. No. 73, ¶¶ 56 – 58, 73 – 75). As discussed in detail in Section II.A.1, *supra*, this Court has found (Doc. No. 84 at 32) that the Indemnity Provision is indeed primary to the Federal Policy. Thus, Quintiles' allegations that Envoy and WebMD breached the implied covenant of good faith and fair dealing by taking positions that this Court has found to be consistent with the meaning Merger Agreement cannot support a claim for breach of the implied covenant of good faith and fair dealing.

This Court also found that Federal's rights against Quintiles were derived exclusively from the Federal Policy. (Doc. No. 84 at 15). Thus, any purported "assistance" by Envoy or WebMD could not (and did not) affect Federal's right to recover from Quintiles the amount it paid to defend and settle the Envoy Securities Litigation. As such, Quintiles' allegations that Envoy and WebMD assisted Federal in its attempts to demonstrate that the Indemnity Provision was primary to the Federal Policy cannot support a claim for breach of the implied covenant of good faith and fair dealing.

Moreover, as with its other counterclaims against WebMD and Envoy, Quintiles cannot allege resulting damages. As discussed in detail above, regardless of what position Envoy or WebMD may have taken (if any), or "assistance" Envoy or WebMD may have provided (if any), Federal has contractual subrogation rights against Quintiles under the Federal Policy. Indeed, this Court found that Federal's rights against Quintiles were derived exclusively from the Federal Policy. (Doc. No. 84 at 15). Thus, it is impossible for Quintiles to show that any damage resulted from any alleged acts or omissions by Envoy or WebMD.

For all of these reasons Quintiles cannot state counterclaims for breach of the implied covenant of good faith and fair dealing against either Envoy or WebMD.

### 3. **Quintiles Cannot State A Claim For Tortious Interference**

In order to state a claim for tortious interference with contract, the following elements must be pleaded: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc., 586 S.E.2d 507, 510 (N.C. Ct. App. 2003). See also Embree Constr. Group, Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992).[7]

In support of its tortious interference counterclaim against Federal, Quintiles alleges that "Federal intentionally and maliciously induced Envoy and WebMD to breach their contract with Quintiles." (Doc. No. 73, ¶ 92). Quintiles further alleges that "Envoy and WebMD have asserted a position in clear breach of the Merger Agreement," and "Envoy and WebMD have continued to breach various provisions and the basic intent of the Merger Agreement." (Doc. No. 73, ¶¶ 94 and 95). Rhetoric notwithstanding, Quintiles, however, cannot allege a required element of its tortious interference claim – that Federal induced Envoy and WebMD to *breach the Merger Agreement* – because the purported breaches upon which Quintiles hinges its claim cannot be supported, and are, in fact, refuted by the Memorandum Opinion. In fact, as will be demonstrated below, Federal's pursuit of subrogation was perfectly consonant with its rights and obligations under the Policy it issued to Envoy.

First, as discussed in Section II.A.1, *supra*, Quintiles' allegation that Envoy breached the non-assignment provision of the Merger Agreement is directly refuted by the Memorandum

---

[7] Copies of Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc., 586 S.E.2d 507 (N.C. Ct. App. 2003) and Embree Constr. Group, Inc. v. Rafcor, Inc., 411 S.E.2d 916 (N.C. 1992) are attached hereto as Exhibits C and D, respectively.

Opinion where this Court necessarily found that Envoy did not breach the non-assignment provision of the Merger Agreement because Federal proceeded against Quintiles based on its subrogation rights under the Federal Policy. (See Doc. No. 84 at 11 and 15). Thus, Quintiles cannot allege a breach of the non-assignment provision on the part of Envoy.

Second, Quintiles' allegation that WebMD and Envoy breached the no rights in third parties and maintenance of insurance provisions of the Merger Agreement by taking the position that the Indemnity Provision is primary to the Federal Policy, (Doc. No. 73, ¶¶ 69(iii) and 52(iii)), is also directly refuted by the Memorandum Opinion which expressly found that the Quintiles Indemnity is primary to the Federal Policy. (Doc. No. 84 at 32). Thus, Quintiles cannot allege a breach of the no rights in third parties or maintenance of insurance provisions of the Merger Agreement by WebMD or Envoy.

Third, Quintiles' allegation that Envoy and WebMD breached the Merger Agreement by taking the position that Federal could enforce the Indemnity Provision against Quintiles has also been refuted by the Memorandum Opinion that held that Federal's right to enforce the Indemnity Provision against Quintiles arises from the subrogation clause in the Federal Policy – not the Merger Agreement. (Doc. No. 84 at 15). Consequently, Quintiles cannot allege an essential element of its tortious interference claim – a breach of the Merger Agreement on the part of Envoy or WebMD. Thus, Quintiles' tortious interference counterclaim must fail.

Even if Quintiles could allege a breach of the Merger Agreement on the part of Envoy or WebMD, such acts could not have caused damage to Quintiles. As discussed above, this Court has found that Federal's rights against Quintiles were derived exclusively from the Federal Policy. (Doc. No. 84 at 15). Accordingly, any acts (or purported breaches) by Envoy or WebMD had no bearing on Federal's rights to recover from Quintiles the amounts it paid to

defend and settle the Envoy Securities Litigation. Thus, it is impossible for Quintiles to show that any damage resulted from the alleged acts of Envoy or WebMD, and for this additional reason, Quintiles' counterclaim for tortious interference must be dismissed. See Polygenex, 515 S.E.2d at 462 (recognizing that because defendant's acts did not cause damage to plaintiff, plaintiff could not state a claim for tortious interference with contract).

Finally, the interpretation of the Merger Agreement advanced by Federal – that the Indemnity Provision is primary to the Federal Policy – has been found by this Court to be the correct interpretation as a matter of law. It would be nonsensical to conclude that Federal committed a tort by advancing a position that this Court has found to be the correct position. For this additional reason, Quintiles' counterclaim for tortious interference must fail.

### 4.    Quintiles Cannot State Claims For Unfair Trade Practices

To state an unfair and deceptive trade practices claim against Federal, Envoy and WebMD, Quintiles must allege: (1) that counter-defendants committed an unfair or deceptive act; (2) in or affecting commerce; and (3) Quintiles was injured thereby. See Canady v. Mann, 419 S.E.2d 597, 602 (N.C. App. Ct. 1992).[8]

Quintiles' unfair and deceptive trade practices counterclaims against Envoy and WebMD are based on allegations that Envoy and WebMD "breached the Merger Agreement and assisted Federal's attempts to have Quintiles pay for the Envoy Securities Litigation, in contravention of the Merger Agreement." (Doc. No. 73, ¶¶ 64 and 81). These allegations are insufficient to state a claim for unfair and deceptive trade practices against Envoy and WebMD for several reasons.

---

[8] A copy of Canady v. Mann, 419 S.E.2d 597 (N.C. App. Ct. 1992) is attached hereto as Exhibit E.

First, as discussed at length above, Quintiles' allegations that Envoy and WebMD "breached the Merger Agreement" are directly refuted by this Court's Memorandum Opinion. Accordingly, Quintiles' allegations that Envoy and WebMD breached the Merger Agreement cannot support its counterclaims against Envoy and WebMD for unfair and deceptive trade practices.

Second, Quintiles' allegations that Envoy and WebMD "assisted Federal's attempts to have Quintiles pay for the Envoy Securities Litigation" cannot support counterclaims for unfair and deceptive trade practices. This Court found that Federal proceeded (and prevailed) against Quintiles in this action under its contractual subrogation rights derived from the Federal Policy. (Doc. No. 84 at 15). Accordingly, the Memorandum Opinion directly refutes Quintiles' allegations that Envoy and WebMD "assisted" Federal in pursuing its rights against Quintiles. Even if, taking Quintiles' allegations as true, Envoy and WebMD "assisted" Federal in its attempts to recover against Quintiles, such "assistance" caused no damage. As noted above, to state a claim for unfair trade practices, Quintiles must allege that it suffered actual injury as a result of Envoy's and WebMD's acts. See Ellis v. Smith-Broadhurst, Inc., 268 S.E.2d 271, 273-74 (N.C. App. Ct. 1980).[9] Based on this Court's finding in the Memorandum Opinion that Federal proceeded under its contractual subrogation rights under the Federal Policy, Federal could have proceeded, and in fact did proceed, without the assistance of Envoy or WebMD. Thus, Quintiles' allegations of "assistance" on the part of Envoy and WebMD are insufficient to support Quintiles' counterclaims against Envoy and WebMD for unfair and deceptive trade practices.

---

[9] A copy of Ellis v. Smith-Broadhurst, Inc., 268 S.E.2d 271 (N.C. App. Ct. 1980) is attached hereto as Exhibit F.

Third, Quintiles' allegations that having Quintiles pay for the Envoy Securities Litigation was in "contravention of the Merger Agreement," are also refuted by the Memorandum Opinion, wherein this Court found that the Indemnity Provision is indeed "primary and unconditional." (Doc. No. 84 at 32).    Thus, allegations that having Quintiles pay for the Envoy Securities Litigation is in "contravention of the Merger Agreement" cannot support counterclaims against Envoy and WebMD for unfair and deceptive trade practices.

Fourth, even if Envoy and WebMD "breached the Merger Agreement" as alleged by Quintiles (which they did not), as a matter of law, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. App. Ct. 1992); Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998).[10]   Courts require "a showing of 'substantial aggravating circumstances'" to support an unfair and deceptive business practices claim.  Broussard, 155 F.3d at 347 (quoting Branch Banking, 418 S.E.2d at 700). Given that the only allegations against Envoy and WebMD in addition to the allegations of breach – that Envoy and WebMD "assisted Federal's attempts to have Quintiles pay for the Envoy Securities Litigation, in contravention of the Merger Agreement" – are refuted by this Court's Memorandum Opinion and cannot support counterclaims for unfair and deceptive business practices, Quintiles has alleged no facts which could constitute "substantial aggravating circumstances."

For these reasons, Quintiles' counterclaims for unfair and deceptive business practices against WebMD and Envoy fail.

---

[10] A copy of Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694 (N.C. App. Ct. 1992) is attached hereto as Exhibit G.

Quintiles' counterclaim for unfair and deceptive business practices against Federal

likewise fails. This counterclaim against Federal is based on allegations that Federal

"improperly and unfairly exerted influence over Envoy and WebMD such that Envoy and

WebMD then asserted a contractual interpretation contrary to the intent and course of

performance of the parties to the Merger Agreement." (Doc. No. 73, ¶ 102). As discussed

above, however, interpreting the Merger Agreement to require that the Indemnity Provision be

primary to the Federal Policy is consistent with the intent of the Merger Agreement. This Court

has expressly so held. (See Doc. No. 84 at 32). Accordingly, a claim for unfair and deceptive

trade practices against Federal premised on allegations that Envoy and WebMD interpreted the

Merger Agreement consistent with this Court's interpretation of the Merger Agreement must fail.

In short, it is neither unfair nor deceptive to enforce the Merger Agreement and the Federal

Policy in accordance with their terms.

### 5. Quintiles Cannot State A Claim For Reformation

Quintiles asserts a counterclaim for reformation against Federal, Envoy and WebMD.

This Court, however, has already decided and rejected Quintiles' reformation claim, which

Quintiles has raised as a defense since the inception of this action.[11] In granting Federal's

motion for summary judgment and finding that Quintiles breached the Merger Agreement, and in

denying reconsideration of that ruling, this Court twice concluded that there was no genuine

---

[11] It is well settled that a reformation claim can be asserted by a defendant as a defense or
counterclaim. See, e.g., Van Keuren v. Little, 598 S.E.2d 168, 172 (N.C. Ct. App. 2004)
(recognizing that a reformation claim can be raised as a defense); Lawrence v. Heavern.C., 61
S.E.2d 697, 699 (N.C. 1950) ("[t]he equitable right to reformation may be invoked by a
defendant by way of defense or counterclaim in an action based on [the contract]"); Huss v.
Huss, 230 S.E.2d 159, 163 (N.C. App. 1976) (same); Cuthbertson v. Morgan.N.C., 62 S.E. 744,
747 (N.C. 1908) (recognizing that reformation can invoked by way of defense or counterclaim).
Copies of Van Keuren, Lawrence, Huss, and Cuthbertson are attached hereto as Exhibits H, I, J
and K, respectively.

Case 3:03-cv-00539   Document 124   Filed 12/29/06   Page 16 of 22 PageID #: 1630

issue of material fact as to whether there was a mutual mistake in the formation of the Merger Agreement and that judgment should be rendered as a matter of law. See, e.g., Van Keuren, 598 S.E.2d at 172 (recognizing that by granting summary judgment, the trial court implicitly rejected the reformation claim raised as a defense to the motion). Quintiles' counterclaim for reformation is based on the same allegations upon which it has based its reformation claim from the outset of this action – allegations that this Court has found to be insufficient to support a reformation claim.[12] (See Doc. 73, ¶¶ 107 – 110). As such, the reformation counterclaim should be dismissed.

As demonstrated in the previously decided motions for summary judgment, Quintiles presented no evidence raising a genuine issue as to whether there was a mutual mistake among all three parties to the indemnity agreement (Quintiles, Envoy and WebMD). Thus, this Court has already rejected Quintiles' reformation claim. Moreover, given Envoy's and WebMD's positions in this litigation – that the indemnity provision in the Merger Agreement is primary to the Federal Policy, Quintiles will never be able to allege, let alone offer evidence in support of, a mistake on the part of Envoy and WebMD.

This Court's prior rejection of Quintiles' reformation claim is consistent with North Carolina authority. Indeed, North Carolina courts have consistently held that conclusory

---

[12] In its initial opposition to Federal's motion for summary judgment, Quintiles raised reformation as a defense and argued that "[i]f the indemnity clause is read to override Federal's insurance obligations, this reading is contrary to the intentions of the contracting parties and should be reformed as a mutual mistake of fact." (Doc. No. 38 (attached as Exhibit B to Request for Judicial Notice), at 12-13). Quintiles also asserted that "[m]aterial issues of fact exist with respect to the mutual mistake of the parties as to the meaning of the indemnity clause in the Merger Agreement." (Doc. No. 39 (attached as Exhibit C to Request for Judicial Notice), at 10). The only evidence that Quintiles submitted in support of its reformation argument is the affidavit of its General Counsel, John Russell, wherein Russell sets forth his understanding of the indemnity agreement – that it "was secondary to Federal's obligation to defend and indemnify Envoy under its policy of insurance." (Doc. No. 38, at 13-14 and Doc. No. 39, at 10, citing to Russell Aff. (Doc. No. 40), at ¶ 14).

allegations such as those offered by Quintiles are insufficient to raise a genuine issue of material

fact precluding summary judgment. See, e.g., Best v. Ford Motor Co., 557 S.E.2d 163 (N.C. Ct.

App. 2001); Van Keuren, 598 S.E.2d at 172; Sudds v. Gillian, 568 S.E.2d 214, 217 (N.C. Ct.

App. 2002).[13] As in Best, Van Keuren, and Sudds, Quintiles offered no evidence in connection

with the previously decided motions - and likewise alleges no specific facts in its counterclaim -

relating to the circumstances contemporaneous with the signing of the indemnity agreement that

would indicate that there was any mutual mistake among all parties (Quintiles, Envoy and

WebMD). Quintiles failed to show - and fails to allege - how it, or the other parties, could have

been confused as to the plain meaning of the straightforward, one-sentence provision stating that

"Quintiles hereby agrees to indemnify and hold harmless Envoy … from any and all Liabilities

arising out of" the Envoy Securities Litigation. Quintiles offered no evidence - and alleges no

specific facts - that suggest, for example, that all three parties intended to state that the indemnity

would be "net of Federal's Policy" or "excess to Federal's Policy" but somehow failed to reflect

that shared intent in the words chosen. Nor did Quintiles, in its oppositions to Federal's motion

for summary judgment (or in its counterclaim), assert specific facts that would support a finding

of mistake on behalf of each party to the indemnity agreement.[14] Quintiles simply failed to

present evidence and fails to allege in its counterclaim specific facts of a mutual mistake as to *all*

parties to the indemnity agreement.

---

[13] Copies of Best v. Ford Motor Co., 557 S.E.2d 163 (N.C. Ct. App. 2001) and Sudds v. Gillian, 568 S.E.2d 214 (N.C. Ct. App. 2002) are attached hereto as Exhibits L and M, respectively.

[14] Federal notes in this regard that Quintiles, as a party to the Merger Agreement, has always had in its possession all of the information relevant to its execution, including communications with WebMD relating to the indemnity. Certainly, if there was any evidence that there was a mistake on the part of any of the parties to the Merger Agreement, including Quintiles itself, Quintiles would have raised it.

As noted above, Quintiles' counterclaim for reformation is based on the same allegations upon which it has based its reformation claim from the outset of this action. Because this Court has already correctly found twice that there was no genuine issue of material fact as to whether there was a mutual mistake in the formation of the Merger Agreement and that judgment should be entered in favor of Federal as a matter of law, Quintiles' counterclaim for reformation fails as a matter of law.

### 6.    Quintiles Cannot State A Claim For Declaratory Relief

Quintiles asserts a counterclaim for declaratory relief against Federal, Envoy and WebMD seeking the following declaration:

> [T]hat the Merger Agreement creates no rights in third-parties, such as Federal; that any rights created by the Merger Agreement cannot be conveyed without the consent of all parties thereto; that the Merger Agreement required that the coverage sold by Federal be maintained, and that the Merger Agreement requires that the coverage sold by Federal to be primary to any purported indemnification obligation on the part of Quintiles. Quintiles additionally seeks a declaration that the coverage sold by Federal is responsible for defending and indemnifying Envoy for the Envoy Securities Litigation.

(Doc. No. 73, ¶ 115). By seeking such a declaration, Quintiles essentially asks this Court to vacate its order granting summary judgment in favor of Federal and to disregard the entirety of its Memorandum Opinion in support of that order wherein this Court found:

> [T]he Court concludes that Quintiles' obligation to indemnify Envoy under the Indemnity Provision is primary and unconditional, and Quintiles' refusal to pay the defense and settlement costs beyond the $500,000 insurance deductible is clearly a breach of that agreement. Therefore, Federal is entitled to judgment as a matter of law and to recover the approximately $11.5 million paid out on behalf of Envoy.

(Doc. No. 84 at 32).[15]  In so concluding, this Court considered and discussed the non-assignment, maintenance of insurance and no rights in third parties provisions of the Merger Agreement. (See Doc. No. 84 at 4, 13 – 16, 20, and 27 – 32).  Given this Court's ruling that Quintiles is primarily liable under the Indemnity Provision for the defense and settlement of the Envoy Securities Litigation, Quintiles counterclaim for declaratory relief should be dismissed in its entirety.

## III.  CONCLUSION

For the reasons discussed above, this Court should dismiss each of Quintiles' counterclaims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

DATED: December 29, 2006

Respectfully submitted,

**NEAL & HARWELL, PLC**

James F. Neal
W. David Bridgers
One Nashville Place
150 Fourth Avenue North
Suite 2000
Nashville, Tennessee  37219
(615) 244-1713

**Attorneys for Plaintiffs and Counter-Defendants**

---

[15] This Court has already denied Quintiles' motion for reconsideration of the order granting summary judgment in favor of Federal.  (See Doc. No. 108).

**ROSS, DIXON & BELL, LLP**

By: _____s/Robert M. Pozin_____

Robert M. Pozin
Terrence R. McInnis
Becki F. Kieffer
5 Park Plaza, Suite 1200
Irvine, California 92614
(949) 622-2700

**Attorneys For Plaintiffs and Counter-Defendants
Admitted Pro Hac Vice**

## Certificate of Service

I hereby certify that a true and exact copy of the foregoing document was served, Via U.S. Mail, postage prepaid, or through the Court's electronic filing system, on the following individuals on the 29th day of December, 2006.

Ames Davis
Jennifer Weaver
Waller Lansden Dortch & Davis
511 Union Street
Suite 2100
Nashville, TN 37218

Jerold Oshinsky
Michael T. Sharkey
1825 Eye Street, NW
Washington, D.C. 20006

Beverly Lake, Jr.
3703 Shadybrook Drive
Raleigh, North Carolina 27609

Willis P. Whichard
84402 Winslow
Chapel Hill
North Carolina 27517

/s/Tina Diego