IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ENVOY CORPORATION and FEDERAL INSURANCE COMPANY, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:03cv0539 |
| QUINTILES TRANSNATIONAL CORP., | ) Judge Thomas A. Wiseman ) |
| Defendant. | ) ) ) |
| QUINTILES TRANSNATIONAL CORP., | ) ) ) |
| Counter-Plaintiff, | ) ) |
| v. | ) ) |
| ENVOY CORPORATION, FEDERAL INSURANCE COMPANY, and WEBMD CORP., | ) ) ) |
| Counter-Defendants. | ) ) |

**MEMORANDUM**

Before the Court are Plaintiff/Counter-Defendant Envoy Corporation's ("Envoy") and Plaintiff/Counter-Defendant Federal Insurance Company's ("Federal") and Counter-Defendant WebMD Corporation's ("WebMD") (collectively "Counter-Defendants") Motion to Dismiss Quintiles counterclaims (Doc. No. 123) and Request for Judicial Notice (Doc. No. 125-1), as well as Quintiles Transnational Corporation's ("Quintiles") Motion to Compel Discovery (Doc. No. 113) and Quintiles' Request for Oral Argument (Doc. No. 128).[1]  All of the pending motions have been fully briefed. For the reasons set forth below, the Court will GRANT the Request for Judicial Notice in Support of Counter-Defendants' Motion to Dismiss (Doc. No. 125-1) and GRANT Counter-Defendants' Motion to Dismiss (Doc. No. 123), thereby dismissing Quintiles' counterclaims (Doc. No. 73). Therefore, the Court will also DENY as MOOT

---

[1] Also pending in this matter are Quintiles' request for a jury trial on damages (Doc. No. 88-1) and Quintiles' Motion to Compel discovery as to the reasonableness of the costs to defend and settle the Envoy Securities Litigation (Doc. No. 113), both of which will be dealt with by the Court in a separate Order addressing the judgment award to Federal of the costs to defend and settle the Envoy Securities Litigation.

1

Quintiles' Motion to Compel (Doc. No. 113) as it pertains to Quintiles' request for discovery related to Quintiles' counterclaims.

In addition, because the Court finds, as discussed below, that the pertinent issues are fully briefed and based on this Court's findings and holding in its previous Memorandum granting summary judgment in favor of Federal (Doc. No. 84) none of Quintiles' counterclaims state a legally cognizable claim, the Court finds that there is no need for oral argument on the counterclaims. Accordingly, the Court will also DENY Quintiles' Request for Oral Argument (Doc. No. 128).

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The Court and the parties are quite familiar with the lengthy factual and procedural background of the case at bar, a comprehensive review of which is set forth in this Court's Memorandum Opinion of May 10, 2006 (the "Court's Memo") (Doc. No. 84), which, as discussed below, is subject to judicial notice. For the most part, the facts stated in the Court's Memo are undisputed and need not be reiterated herein. However, the Court acknowledges that there are facts and procedural history pertinent to consideration of Quintiles' counterclaims and Counter-Defendants' Motion to Dismiss, which is not covered in the Court's Memo or otherwise subject to judicial notice. A summary of these facts and the pertinent procedural history is as follows:

Quintiles filed its Answer in Response to Envoy's and Federal's Complaint and Counterclaims against Counter-Defendants on January 4, 2006 (Doc. No. 73). Quintiles counterclaims included ten (10) separate counts: breach of express contract provisions by Envoy (Count 1) and WebMD (Count 4); breach of contractual duty of good faith and fair dealing by Envoy (Count 2) and WebMD (Count 5); unfair trade practices against Envoy (Count 3), WebMD (Count 6), and Federal (Count 8); tortious Interference with a contract by Federal (Count 7); reformation against all Counter-Defendants (Count 9); and for a declaration of rights pursuant to the Merger Agreement and the Federal Insurance Policy against all Counter-Defendants (Count 10).

At the time Quintiles filed its Answer and Counterclaims, cross-motions for summary judgment by Envoy, Federal and Quintiles were pending before this Court. The Court therefore gave Counter-Defendants thirty (30) days from the ruling on the pending dispositive motion to file a response to the counterclaims (Doc. No. 80). On May 10, 2006 the Court issued a comprehensive Memo setting forth the

2

extensive factual and procedural history of the case, as well as the parties' arguments for summary judgment. After careful consideration of the record and the law, the Court denied Quintiles' Motion for Summary Judgment as it pertained to claims by Federal, and granted in part Quintiles' Motion as it pertained to claims by Envoy. (Doc. Nos. 84 & 85.) The Court then denied as moot Envoy's Motion for Summary Judgment and granted Federal's Motion for Partial Summary Judgment.

The Court's Order awarded judgment in favor of Federal for the amount of the costs it incurred on behalf of Envoy to defend and settle the Envoy Securities Litigation, plus appropriate interest thereon. (Doc. No. 85.) The Court ordered the parties to consult with each other and reach an agreement as to the appropriate amount of damages and to advise the Court as to such amount or, if they were unable to reach an agreement as to the appropriate amount of damages, to submit a separate statement as to the appropriate amount of damages to the Court on or before May 19, 2006. The parties were unable to come to an agreement as to damages and interest and each filed a document purported to be a statement regarding the determination of damages. However, Quintiles' statement did not address the appropriate calculation of damages, but instead, requested a jury trial on the issue of damages and pre-judgment interest (Doc. No. 88-1).

On June 15, 2006 this Court denied Quintiles' motion for reconsideration (Doc. No. 108), and the parties spent the month of June 2006 briefing the issue of damages and pre-judgment interest. On July 11, 2006 the parties entered into mediation (Doc. No. 110). The parties then spent the summer and most of the fall of 2006 in mediation and settlement negotiations. On October 6, 2006, Quintiles filed a motion to compel discovery as to the issue of damages and counterclaims[2] (Doc. No. 113).

In November 2006, after approximately six months of settlement negotiations, the parties informed the Court that an imminent settlement was unlikely and Magistrate Judge Griffin entered an Order instructing Counter-Defendants to file a response to Quintiles' pending motion to compel discovery and Quintiles' counterclaims by December 29, 2006 (Doc. No. 118). The parties filed their motions and responses in December 2006 and January 2007, including the three motions now before the Court:

---

[2] Quintiles' Motion to Compel Discovery requests that the Court order Federal and Envoy to provide a full and complete response to Quintiles' First Document Request, which seeks information and documents related to Quintiles' counterclaims and Federal's statement of damages. The Court will address the Motion to Compel in so far as it pertains to information or documents related to Federal's statement of damages in a separate filing.

3

Counter-Defendants' Motion to Dismiss Quintiles' counterclaims (Doc. No. 123), Counter-Defendants' Request for Judicial Notice in Support of Counter-Defendants' Motion to Dismiss (Doc. No. 125-1), and Quintiles' Request for Oral Argument on the Motion to Dismiss (Doc No. 128).

## II. STANDARD OF REVIEW

Under Rule 12 of the Federal Rules of Civil Procedure, a defendant may seek dismissal of the complaint, or certain causes of action set forth therein, based upon the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the plaintiff. *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). The Court is not required, however, to "accept as true legal conclusions or unwarranted factual inferences." *Bovee v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) (internal quotation marks and citation omitted).

### *Request for Judicial Notice*

When ruling on a Rule 12(b)(6) motion, a court may properly consider matters of public record, orders, items appearing in the record of the case, as well as documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even if the documents are presented by the defendant. *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted); *see also* Fed. R. Civ. P. 10 ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Under the Federal Rules of Evidence, courts may take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In addition, a district court must take judicial notice "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

In this case, Counter-Defendants request that the Court take judicial notice of various documents previously filed, including the Court's Memo on the Motion for Summary Judgment, Quintiles' Memo in

4

Opposition to Plaintiffs' Motion for Summary Judgment and Quintiles' Response in Opposition to Envoy's Statement of Undisputed Facts. The Court notes that both Quintiles and the Counter-Defendants cite to each other's pleadings and other papers filed with the Court in support of their positions regarding the Motion to Dismiss the Counterclaims. Quintiles does not dispute that the Court may take judicial notice of the documents in the record for this case, but instead contends that Counter-Defendants should not be allowed to use the documents in the record to inject facts outside the pleadings in this motion to dismiss. Specifically, Quintiles opposes the Request for Judicial Notice to the extent that the Request seeks to establish the truth of any facts presented either in the filings or in the Court findings on summary judgment. According to Quintiles, disbelief of the truth of the factual allegations may not form the basis for dismissal under Fed. R. Civ. P. 12(b)(6) and thus, it opposes the reliance on any judicially noticed documents to attempt to establish such disbelief of facts as an attack on Quintiles' counterclaims.

As set forth below, Quintiles' counterclaims simply restate the same factual allegations it made in its prior briefing on the cross-motions for summary judgment, apparently under the impression that the Court, in considering the Motion to Dismiss, will be limited to the facts in Quintiles' pleadings and will therefore be required to reconsider its analysis of the Merger Agreement and its findings regarding the Indemnification Provision. Recognizing this, Counter-Defendants move to dismiss the counterclaims relying on the Court's findings that the Indemnity Provision of the Merger Agreement was express and unconditional and that neither the non-assignment provision, nor the provision prohibiting rights in third parties, has any bearing on Federal's subrogation rights under the Federal Policy and the fact that this Court has already denied Quintiles' motion for reconsideration.

The Court may and should take judicial notice that this Motion to Dismiss is based on the same facts that formed the basis for the summary judgment previously entered by this Court in this matter. *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (taking judicial notice that the appeal arose from the same facts that formed the basis for the prior judgment "[b]ecause this court sits to decide real cases, not abstract questions of law, and because an adequate understanding of a case is essential to our decision . . . .") Usually, consideration of and citation to an earlier case will not turn a Rule 12(b)(6) motion into a Rule 56 motion. This Court may do so even accepting Quintiles' factual allegations as true and looking only at the facts presented by the parties, as required by the standard of

5

review for a motion to dismiss. *See Rodic*, 615 F.2d at 738. Thus, the Court may take judicial notice of the facts as set forth in the Court's Memorandum and the procedural aspects of this case that are pertinent to Quintiles' counterclaims and the Motion to Dismiss including the fact that this Court granted Federal summary judgment finding that Federal is entitled to recover for Quintiles' breach of the Indemnity Provision of the Merger Agreement, without converting the motion into one for summary judgment under Rule 56. Accordingly, Counter-Defendants' Request for Judicial Notice (Doc. No. 125-1) is GRANTED.

### III. DISCUSSION

Counter-Defendants contend that each of Quintiles' counterclaims should be dismissed for failure to state a claim based on this Court's previous findings.[3] (Doc. No. 27.) Counter-Defendants point out that Quintiles' counterclaims are based primarily on the same defenses this Court rejected in denying Quintiles' motion for summary judgment and granting Federal's motion for summary judgment. Thus, under the "law of the case" doctrine the Court's earlier findings are the law of the case and the Court should avoid reconsidering these matters and issues already decided by the Court.

The law of the case doctrine generally discourages courts from reconsidering determinations that the court made in an earlier stage of the proceedings. *U.S. v. Graham*, 327 F.3d 460, 464 (6th Cir. 2003) ("[l]aw of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.") (citations omitted). Therefore, in cases such as this, where the Court has already decided an issue, its decision should generally be given effect throughout the litigation. *Id.* Here, there is no question that Quintiles' counterclaims are based on the same issues and arguments it previously raised in opposition to Envoy's and Federal's motions for summary judgment and in support of its own motion for summary judgment.[4] Consequently, the Court's Memo represents the law of the case.

---

[3] Specifically, the Court's finding that the Indemnity Provision expressly obligated Quintiles to pay the defense and settlement costs of the Envoy Securities Litigation and that Federal's claims were based on its right of subrogation under the Federal Policy, which was not a prohibited assignment of Envoy's interest under the Merger Agreement.

[4] Namely, that Envoy and WebMD breached the "non-assignment," "no rights in third parties," and/or "maintenance of insurance" provisions of the Merger Agreement when they took the position that the Indemnity Provision was primary to the Federal Policy and argued that Federal was entitled to recover from Quintiles as a subrogee to Envoy's rights under the Merger Agreement.

6

Although the parties are correct that the "law of the case" doctrine does not *require* that this Court be bound by its findings in its earlier decision and its refusal to reconsider its decision, the principles of the doctrine do provide that the Court may refuse to reopen what it has already decided and Quintiles has presented no legitimate reason or new legal basis for the Court revisit or reconsider the issues previously decided in its Memorandum.[5] *See Bowles v. Russell*, 423 F.3d 668, 676-677 (the law of the case doctrine is discretionary when a court is reviewing its own prior decision); *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (noting that one purpose of the doctrine of the law of the case is to prevent the continued litigation of settled issues). Moreover, the history of this case clearly shows a need to limit relitigation of issues already fully briefed, argued, discussed, considered, and decided by this Court. Nevertheless, the Court will consider each of Quintiles' counterclaims and the parties' arguments as to each in turn below.

### A. Breach of Contract Against Envoy (Count 1) and WebMD (Count 4)

Quintiles' counterclaims include a claim for breach of an express contract against Envoy and WebMD. In order to state a claim for breach of contract under North Carolina law, Quintiles must demonstrate: (1) the existence of a valid contract, and (2) breach of the terms of the contract. *Parker v. Glosson*, 641 S.E.2d 735, 737 (N.C. App. 2007); *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. App. 2000). The parties do not dispute that the Merger Agreement is a valid contract between Quintiles, Envoy and WebMD. Thus, the Court must determine (1) whether, in light of the Court's findings in its prior Memorandum, Quintiles' can state a claim for breach of the Merger Agreement, or (2) whether, as Quintiles now claims, Quintiles has or even can allege the existence of a valid implied-in-fact contract between the parties that "Quintiles' indemnification under the Merger Agreement was secondary to insurance Envoy was entitled to under the coverage sold by Federal." (Doc. No. 126-1, at 4-7.)

---

[5] Although the Court's Memorandum specifically found that the plain and unambiguous language of the Merger Agreement established Quintiles' duty to indemnify Envoy for the Envoy Securities Litigation and that Quintiles breached this duty under the Indemnity Provision by refusing to pay defense and settlement costs and its Order held that Federal is entitled to judgment as a matter of law as to its subrogated claims for breach of contract, the Court recognizes that the Order granting Federal's motion for summary judgment was not entered as a final judgment due to issues with the judgment amount and the appropriate calculation of interest. (Doc. No. 93) The fact that the Court's decision is not technically a final judgment does not call into question the Court's decision on the merits of the claims or the issues involved. In fact, the Court reiterated its decision by denying Quintiles' motion for reconsideration. (Doc. No. 108).

7

### 1. Whether Quintiles'' Counterclaims State a Claim for Breach of Express Contract

Quintiles once again asserts that Envoy and WebMD breached the "non-assignment" provision, "no rights in third parties," and "maintenance of insurance" provisions of the Merger Agreement by taking the position that the Indemnity Provision is primary to the Federal Policy and asserting that Federal, as a subrogee to Envoy's rights under the Federal Policy, has a right to recover from Quintiles for breach of the Indemnity Provision of the Merger Agreement. (Doc. No. 73, ¶¶ 52(i) -52(vii) and 69(i)-69(vii)). Counter-Defendants argue that Quintiles' counterclaims do not and cannot state a claim for breach of express contract against Envoy or WebMD because the allegations upon which Quintiles bases its counterclaims are directly refuted by this Court's Memorandum, wherein by holding that Federal is entitled to summary judgment, the Court necessarily found that neither Envoy nor WebMD breached any of the provisions of the Merger Agreement. (Doc. No. 124, 4-7.) The Court agrees for two reasons.

First, this Court found when it granted Federal's motion for summary judgment that Quintiles' obligation to indemnify Envoy under the Indemnity Provision is express and unconditional and that Federal's right to enforce the Indemnity Provision against Quintiles arises from the subrogation clause in the Federal Policy, not from an assignment of rights in the Merger Agreement. These findings clearly rebut any of Quintiles' allegations that Envoy or WebMD somehow breached the non-assignment or the "no rights in third parties" provisions of the Merger Agreement. (Doc. No. 84, at 13-15.)

Second, Quintiles' allegation that Envoy and WebMD breached the "maintenance of insurance" provision by claiming that Quintiles' obligation to indemnify was primary to Federal's Policy – a position Quintiles' contends was inconsistent with the parties' agreement in the Merger Agreement that the coverage sold by Federal would be maintained – is also directly refuted by the Court's finding that Quintiles' obligation under the Indemnity Provision is primary to the Federal Policy at issue and that the Federal Policy at issue had expired fourteen months before the parties entered into the Merger Agreement. (Doc. No. 84, at 27-32.) Even if this Court has not already made these findings, Quintiles has set forth no factual allegations to support the claim that Envoy or WebMD breached any of the cited provisions of the Merger Agreement or that there existed any "implied covenant" between the parties contrary to the express terms of the Merger Agreement. Accordingly, Quintiles has not and cannot state a claim for breach of the Merger Agreement against Envoy or WebMD.

### 2. Whether Quintiles' Counterclaims Have or Can State A Claim For Breach of An Implied-In-Fact Contract.

Apparently recognizing the fact that it cannot maintain its counterclaim for breach of an express contract against Envoy and WebMD, Quintiles responds to the motion to dismiss goes beyond the allegations in its counterclaims to argue for the first time that, despite this Court's ruling on summary judgment, the Court did not address the subsequent "implied-in-fact" contract wherein the parties agreed that the Federal Policy would bear primary liability for the Envoy Securities Litigation. (Doc. No. 126-1, at 7.) According to Quintiles, Envoy and WebMD breached the implied term of good faith and fair dealing and conditions of the implied-in-fact contract when they reversed their position from this original understanding (Doc. No. 126-1, at 7). Quintiles contends that the pleadings and allegations of Envoy's and WebMD's statement and conduct can be read to allege the existence of a valid implied-in-fact contract between Envoy, WebMD and Quintiles and, thus, its counterclaim for breach of contract should not be dismissed. In the alternative, Quintiles requests leave to amend its counterclaims to include this additional implied-in-fact contract claim.

In response to Quintiles' new argument that the contract at issue is not the Merger Agreement, but a purported post-Merger Agreement, implied-in-fact contract entered into by the parties, Envoy and WebMD point out that even if Quintiles' had pled the implied-in-fact contract theory in its counterclaims, which it has not, Quintiles cannot state a claim for breach of an implied-in-fact contract. (Doc. No. 132, at 6.) The Court agrees for two reasons. First, there is absolutely no consideration – some benefit or advantage to the promisor or some loss or detriment to the promisee, which is necessary for an enforceable contract under North Carolina law. *Carolina Helicopter Corp. v. Cutter Realty Co.*, 139 S.E.2d 362, 368 (N.C. 1964).

Quintiles does not allege anywhere in its counterclaims, and there are absolutely no facts in the record to support the contention that Quintiles provided any consideration at any time, either before or after the Merger Agreement was executed, for the purported implied-in-fact contract. Thus, there can be no implied-in-fact contract that would alter Quintiles' unconditional obligation under the Indemnity Provision of the Merger Agreement.

Second, as discussed in this Court's Memorandum, the explicit terms of the Merger Agreement preclude any purported claim by Quintiles that there existed an implied covenant of the Merger

9

Agreement or that an implied-in-fact contract was created by the subsequent conduct of the parties to the Merger Agreement. (Doc. No. 84, at 22-27.) Specifically, Sections 11.3 and Section 11.4 provide that the Merger Agreement is the entire agreement between the parties with respect to the indemnification obligations for the Envoy Securities Litigation and the parties may only amend or modify the terms of the Merger Agreement by a subsequent writing signed by each of the parties. There are no factual allegations or evidence in the record that either party ever affirmatively waived its right to have any amendments, modifications or alterations to the express terms of the Merger Agreement made in writing or that either party ever entered into a writing altering Quintiles' obligations under the Indemnity Provision of the Merger Agreement. Based on these facts, the Court finds that, even if Quintiles were to amend its counterclaims, it could not state a claim for breach of contract based either on the Merger Agreement or its newly presented theory that the parties entered into an implied-in-fact contract.[6]

### B. Breach of Contractual Duty of Good Faith & Fair Dealing Against Envoy (Count 2) and WebMD (Count 5)

"[I]t is a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." *Ultra Innovations, Inc. v. Food Lion, Inc.*, 502 S.E.2d 685, 687 (N.C. App. 1998) (citations omitted). "Good faith and fair dealing are required of all parties to a contract, and each party to a contract has the duty to do everything that the contract presupposes that he will do to accomplish its purpose." *Id.* Quintiles alleges that Envoy's and WebMD's breach of the implied-in-fact contract supports a claim for breach of the duty of good faith and fair dealing. (Doc. No. 126-1, at 13.)

In support of this counterclaim, Quintiles once again argues that the parties intended for the coverage sold by Federal to provide primary coverage for the Envoy Securities Litigation and Envoy's and WebMD's abrupt change in its position on March 1, 2002, as well as its position in assisting Federal in the lawsuit, is contrary to the parties own belief regarding the intent of the Merger Agreement and thus, a breach of Envoy's and WebMD's contractual duty of good faith and fair dealing. Specifically, Quintiles

---

[6] In addition, Quintiles' claim that allegations that Envoy and WebMD breached the implied covenant of good faith and fair dealing can, in and of itself, support a claim for breach of contract is without merit as discussed below. Moreover, there cannot be an express and implied contract for the same thing existing at the same time. *See Campbell v. Blount*, 210 S.E.2d 513, 515 (N.C. App. 1975). This alone would preclude Quintiles from attempting to rewrite the Merger Agreement based on an implied-in-fact contract theory.

10

claims that its allegations, taken as true, establish that Envoy and WebMD acted in bad faith. (Doc. No. 126-1, at 13.) Quintiles alleges that Envoy's and WebMD's actions caused it to suffer harm, including the costs of defending itself in *this meritless action*.[7] (Doc. No. 73, at ¶¶ 53, 76, 96) (emphasis added).

In response Envoy and WebMD argue that without a valid breach of contract claim, there can be no breach of implied covenant of good faith and fair dealing. (Doc. No. 124-1, at 9.) The Court agrees. While it is true that the duty of good faith and fair dealing is implied in every contract under North Carolina law, it is also true that Quintiles' counterclaims for breach of good faith and fair dealing are "part and parcel" of its claims for breach of contract. *Lord of Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (citing *Murray v. Nationwide Mutual Ins. Co.*, 472 S.E.2d 358, 368 (N.C. App. 1996)). Thus, absent a valid claim for breach of contract, there is no cause of action for breach of an implied covenant of good faith and fair dealing. *See Lord of Shalford*, 127 F. Supp. 2d at 787; *Polygenex Int'l, Inc. v. Polyzen, Inc.,* 515 S.E.2d 457, 461-62 (N.C. App. 1999). Accordingly, since Quintiles' counterclaims for breach of contract are dismissed as discussed above, Quintiles cannot establish a claim for breach of the implied covenant of good faith and fair dealing, whether it is based on the Merger Agreement or a purported implied-in-fact contract.

### C. Unfair Business Practices Under N.C. Gen. Stat § 75-1.1, Against Envoy (Count 3), WebMD (Count 6) and Federal (Count 8)

To state a claim for unfair trade practices under N.C. Gen. Stat. § 75-1.1, Quintiles must allege (1) Counter-Defendants committed an unfair or deceptive act; (2) the act in question was in or affecting commerce; and (3) the act proximately caused injury to Quintiles. *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001). It is well-settled under North Carolina law that a claim for unfair and deceptive trade

---

[7] Quintiles' reference to "this meritless action" is directed at the breach of contract claims brought by Envoy and Federal against Quintiles and based on its belief that it is not obligated under the Indemnity Provision of the Merger Agreement and therefore, not liable to Envoy or Federal for the costs to defend or settle the Envoy Securities Litigation. However, as set forth in this Court's Memorandum granting summary judgment to Federal, Quintiles' characterization of the present case is misplaced. Although unnecessary, Counter-Defendants also address this allegation arguing that, even if Quintiles could show a breach of good faith and fair dealing, Quintiles could not prove damages for the same reasons that it could not prove damages for a breach of contract claim – Federal's right of subrogation arises out of the Federal Policy, not the Merger Agreement and Federal could have sued to recover its payments on behalf of Envoy regardless of the parties' interpretation of the Merger Agreement. (Doc. No. 132, 10-11.) The Court agrees. Regardless of Quintiles' protestations, the fact remains that Federal's right to enforce the Indemnity Provision in the Merger Agreement arose from the subrogation clause in the Federal Policy and is thus, independent of and unaffected by any positions taken by Envoy or WebMD and precludes Quintiles' allegations from supporting a claim for breach of the implied covenant.

11

practices pursuant to N.C. Gen. Stat. § 75-1.1, unlike a claim for breach of the duty of good faith and fair dealing, is an independent claim that stands alone from an action for breach of contract. *Page v. Lexington Ins. Co.*, 628 S.E.2d 427, 430 (N.C. App. 2006); *Boyd v. Drum*, 501 S.E.2d 91, 97 (N.C. App. 1998). Accordingly, Quintiles' counterclaims for unfair trade practices are independent from Quintiles' other counterclaims and the Court must consider whether Quintiles' allegations against Counter-Defendants are sufficient to establish that each Counter-Defendant committed an unfair or deceptive act and, if so, whether the act caused injury to Quintiles.

Quintiles alleges that Counter-Defendants deceived Quintiles by asserting an interpretation of the Merger Agreement as it related to Quintiles' indemnity liability that was contrary to the parties' prior understanding of Quintiles' obligations under the Merger Agreement. (Doc. No. 73, at ¶¶ 62-64, 79-81, 99-102). Specifically, as to Envoy and WebMD, Quintiles alleges that their assertion of an interpretation of the contract, inconsistent with their own understanding, and their acts in assisting Federal's attempts to have Quintiles pay for the Envoy Securities Litigation, constitute "unfair trade practices" under North Carolina law and as a result, Quintiles has suffered harm, including the costs of defending itself in "this meritless action."

In response to this claim, Counter-Defendants argue that, as the Court has already held, there was no breach of the Merger Agreement and that Envoy and WebMD did not assist Federal in claiming a right against Quintiles for the settlement because Federal had a separate, independent right to do so under the Federal Policy. Additionally, they argue that the Court's finding that the Indemnity Provision is primary to the Federal Policy supports the fact that Quintiles had an obligation to pay the settlement regardless of Envoy's and WebMD's acts in supporting Federal's position. The Court agrees.

Whether an act or practice is unfair or deceptive is a question of law for the Court to determine on a case-by-case basis. *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676,681 (N.C. 2000). As Counter-Defendants correctly point out, the fact that this counterclaim is "separate and apart" from Quintiles' breach of contract claim does not mean that the Court must or even should ignore its prior findings and blindly accept the same factual allegations regarding the parties' "understanding" of their obligations under the Merger Agreement, their purported change in position and their assistance of Federal – allegations this Court has twice rejected as baseless. Quintiles' allegations regarding Envoy's

and WebMD's "unfair trade practices" are nothing more than bare assertions unsupported by the factual record and directly refuted by this Court's Memo finding that the Merger Agreement is unconditional, the Indemnity Provision is primary, and Federal's right to proceed against Quintiles in this action derives from its rights under the Federal Policy, not from the Merger Agreement between Quintiles and Envoy. (Doc. No. 84, at 13-16, 27-29.)

Moreover, even assuming for purposes of Counter-Defendants' motion that Envoy and WebMD performed the alleged unfair and deceptive acts, Quintiles' claim must fail because it did not suffer actual injury as a result of these alleged acts. *See Ellis v. Smith-Broadhurst, Inc.*, 268 S.E.2d 271, 273-74 (N.C. App. 1980) (to prove a violation of N.C. Gen. Stat. § 75-1.1, plaintiff must prove that it suffered actual injury as a proximate result of defendants' unfair or deceptive act). Based on this Court's finding in its Memorandum Opinion that Federal's claims against Quintiles were based on its contractual subrogation rights under the Federal Policy, it is clear that Federal's action against Quintiles was not dependent on the positions taken by Envoy or WebMD. Therefore, there is no support for the claim that any acts or positions taken by Envoy or WebMD resulted in actual injury or damage to Quintiles. Contrary to Quintiles' assertion, the costs incurred in defending itself in this action are not in any way related to Envoy's or WebMD's understanding of the Merger Agreement or any purported change in position. As this Court has already held, Federal is entitled to recover from Quintiles regardless of Envoy's and WebMD's position. (Doc. No. 84.)

As for its claims against Federal, Quintiles alleges that Federal "improperly and unfairly exert[ed] influence over Envoy and WebMD such that Envoy and WebMD then asserted a contractual interpretation contrary to the intent and course of performance of the parties to the Merger Agreement." (Doc. No. 73, at ¶ 102.) According to Quintiles, Federal's actions amount to tortious interference with the contract and thus, establish an unfair trade practices claim against Federal. As discussed below, Quintiles' allegations fail to support the counterclaim for tortious interference against Federal and as such, cannot support Quintiles' claim for unfair trade practices against Federal.

In addition, Quintiles also claims that its counterclaim for unfair trade practices against Federal includes Federal's interference with the implied-in-fact contract when it relied on a characterization of the transfer of rights as arising under "subrogation" in the present case. (Doc. No. 126-1, at 11-12.) Quintiles

13

argues that Federal's contention that its rights were derived by subrogation and not assignment contradicts its own statements that it "reserved rights" in connection with the transfer of rights and its statements in other cases where Federal frequently refers to transfers like the one allegedly made by Envoy as "assignments."

Despite Quintiles attempt to repackage its arguments against Federal as a new counterclaim, Quintiles' contention that Federal induced Envoy to breach the Merger Agreement and that this action was an unfair and deceptive act is directly refuted by this Court's finding that Quintiles, not Envoy, breached the Merger Agreement. Moreover, Quintiles' claim that Federal's pursuit of its subrogation rights under the Federal Policy and its position in this action that subrogation is not an assignment constitute unfair and deceptive acts is also refuted by the Court's finding that subrogation and assignment are "distinct" remedies and its rejection of Quintiles' prior argument that subrogation constitutes an assignment. (Doc. No. 84, at 14-15.)

As discussed previously, the interpretation presented by the Counter-Defendants is consistent with the terms and the Court's reading of the Merger Agreement. Again, it is neither unfair nor deceptive to enforce the Indemnity Provision in the Merger Agreement and the Federal Policy in accordance with their terms, which have since been approved by this Court. Based on a review of Quintiles' counterclaims, the Court finds that Quintiles has not and cannot fulfill each of the requirements necessary to state a claim for unfair and deceptive trade practices against any of the three Counter-Defendants and that these counterclaims must be dismissed.

**D. Tortious Interference with Contract Against Federal (Count 7)**

Quintiles alleges that Federal tortiously interfered with its contractual relationship with Envoy and WebMD by intentionally and maliciously inducing Envoy and WebMD to breach their contract with Quintiles. (Doc. No. 73, at ¶ 92.) In order to state a claim for tortious interference against Federal, Quintiles must show that Quintiles had (1) a valid contract with Envoy and WebMD which conferred upon Quintiles a contractual right against Envoy and WebMD; (2) Federal knew of the contract; (3) Federal intentionally induced Envoy or WebMD not to perform the contract; (4) Federal did so without justification; and (5) Federal's actions resulted in actual damage to Quintiles. *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 586 S,E,2d 507, 510 (N.C. App. 2003). Quintiles allegations are based on the purpoted

14

implied-in-fact contract.[8] As with its other counterclaims, Quintiles' reliance on the purported "implied-in-fact" contract is again misplaced.

According to Quintiles, Federal interfered with the implied-in-fact contract between Quintiles, WebMD, and Envoy, which was created during the years after the Merger Agreement when the parties treated the coverage sold by Federal as the primary layer of insurance for the Envoy Securities Litigation. (Doc. No. 126-1, at 14.) However, as discussed previously, there are no allegations of an implied-in-fact contract in Quintiles' counterclaims, let alone allegations that Federal interfered with such a contract. Based on this Court's finding that Quintiles has not and cannot plead the requisite element of consideration to establish such a contract exists and further, that the express terms of the Merger Agreement prohibit the formation of an implied-in-fact contract, Quintiles cannot state a claim for tortious interference against Federal and this counterclaim must also be dismissed.

### E. Reformation Against All Counter-Defendants (Count 9)

Quintiles claims that the parties to the Merger Agreement intended Federal coverage would be primary coverage for the costs of defense and any liabilities arising out of the Envoy Securities Litigation and intent was reflected in plain language of the Merger Agreement. In the alternative, Quintiles contends that if the language does not reflect this intent, then it was due to a mutual mistake of the parties drafting the Merger Agreement and it should be reformed so that the Federal policy is primarily responsible to pay the costs of the defense and any liability arising out of the Envoy Securities Litigation. Quintiles argues it has stated a claim for reformation of the Merger Agreement under North Carolina law by alleging that the "drafters and parties to the Merger Agreement intended that the coverage sold by Federal would serve as the primary insurance coverage of the Envoy Securities Litigation." According to Quintiles, the parties to the Merger Agreement shared the same misconception and thus, the allegations state a claim under North Carolina law for reformation. (Doc. No. 126-1, at 21.)

However, despite Quintiles' arguments to the contrary, its allegations do not have to be accepted as true, when, as is the case here, they are contradicted by matters subject to judicial notice – the findings of this Court in its Memo granting Federal's motion for summary judgment, and the Court's denial

---

[8] Quintiles concedes in its response that, based on the Court's Memorandum, it has not and cannot allege a breach of the Merger Agreement on the part of Envoy or WebMD and therefore, there is no basis for a claim of tortious interference with the Merger Agreement.

15

of Quintiles' Motion for Reconsideration. While acknowledging that the Court did grant summary judgment in Federal's favor and subsequently denied its motion for reconsideration, which was based on its arguments in favor of reformation, Quintiles argues that neither of the Court's rulings contained a specific discussion or any substantive findings regarding its claims for reformation and any implicit rejection of Quintiles' reformation claim was simply wrong. (Doc. No. 126-1, at 23.) Quintiles' argument is without merit.

Regardless of how it is characterized, there is no question that this Court considered and rejected Quintiles' claim for reformation when it found that Quintiles' promise to indemnify Envoy for the Envoy Securities Litigation was unconditional and there was no issue of fact as to whether a mutual mistake existed at the time of the formation of the Merger Agreement. (Doc. No. 84.) Despite Quintiles attempt to repackage its twice rejected claim for reformation as a new counterclaim, there is no question that this is the same defense that Quintiles has used throughout this litigation and the same defense that this Court rejected on its merits by granting summary judgment to Federal and denying Quintiles' motion for reconsideration. *See Van Keuren v. Little*, 598 S.E.2d 168, 170 (N.C. App. 2004); *Best v. Ford Motor Co.*, 557 S.E.2d 163, 166 (N.C. App. 2001) ("because mutual mistake is one that is common to *all the parties to a written instrument*, the party raising the defense must state with particularity the circumstances constituting mistake as to all of the parties to the written instrument." (citations omitted)). Accordingly, Quintiles' counterclaim for reformation fails as a matter of law[9] and should be dismissed without leave to amend.

### F. Declaration of Rights Pursuant to the Merger Agreement and Federal Coverage Against All Counter-Defendants (Count 10)

Quintiles also asserts a counterclaim for declaratory relief against Counter-Defendants seeking the following declaration:

---

[9] Moreover, Quintiles' reformation counterclaim should be dismissed on the ground that Quintiles has failed to plead mutual mistake with the particularity required by Fed. R. Civ. 9(b). The Court notes that even if Quintiles made an attempt to raise additional factual allegations in its counterclaim as to mutual mistake or to allege how it, or other parties, could have been confused by the plain meaning of the straightforward, one-sentence Indemnity Provision, which it has not, there are absolutely no facts or evidence in the record to support a finding of mistake on the part of Envoy and WebMD. As discussed in this Court's Memorandum, Quintiles cannot allege any specific facts to suggest that the parties intended for the Indemnity Provision to be "net of Federal's Policy" or "excess to Federal's Policy" and at no time during this litigation has Quintiles presented evidence or set forth specific factual allegations of a mutual mistake as to all parties to the Merger Agreement. *See Van Keuren v. Little*, 598 S.E.2d at 170.

16

> [T]hat the Merger Agreement creates no rights in third-parties, such as Federal; that any rights created by the Merger Agreement cannot be conveyed without the consent of all parties thereto; that the Merger Agreement required that the Federal insurance be maintained, and that the Merger Agreement requires that the coverage sold by Federal to be primary to any purported indemnification obligation on the part of Quintiles. Quintiles additionally seeks a declaration that the coverage sold by Federal is responsible for defending and indemnifying Envoy for the Envoy Securities Litigation.

(Doc. No. 73, ¶ 115.) In response to this counterclaim, Counter-Defendants argue that Quintiles is seeking to have the Court vacate its order granting summary judgment in favor of Federal and to disregard much of its Memo in support of that Order, which would not be appropriate. Counter-Defendants point out that this Court has already considered and discussed the "non-assignment," "maintenance of insurance," and "no rights in third parties" provisions of the Merger Agreement and even denied Quintiles' motion for reconsideration. (Doc. No. 132, at 17; Doc. No. 124-1, at 19.) The Court agrees. Given the Court's ruling that Quintiles is primarily liable under the Indemnity Provision for the defense and settlement of the Envoy Securities Litigation, Quintiles' counterclaim for declaratory relief should be dismissed. (Doc. No. 124-1, at 20.)

Quintiles claims that it is requesting a declaration of the rights of all the parties pursuant to the Federal Policy, which would include any rights Quintiles would have, upon payment, to stand in Envoy's shoes against Federal. (Doc. No. 126-1, at 20.) According to Quintiles, neither the Court, nor Federal, has addressed this potential right and if Quintiles must pay the defense and settlement costs, then it will be subrogated to Envoy's coverage rights against Federal. In addition, Quintiles seeks a declaration of the rights of the parties under the implied-in-fact contract created by Envoy's and WebMD's conduct.

Quintiles' argument ignores the findings in this Court's Memo: (1) Federal's rights against Quintiles derived from the subrogation provision of the Federal Insurance policy and the Merger Agreement contained no such subrogation provision that would confer subrogation rights upon Quintiles; and (2) Quintiles' obligation to indemnify Envoy under the Indemnity Provision, not the Federal Policy, was primary and unconditional. The Court agrees with Counter-Defendants that the Court has already established that Quintiles, and not Federal, is primarily and ultimately liable for the Envoy Securities Litigation and any argument that it should now be able to turn around and recover from Federal as subrogee of Envoy is not only circular, but absurd. (Doc. No. 132, at 17.) Based on the express language of the Indemnity Provision and the other provisions of the Merger Agreement, as well as the

17

Court's findings in its Memo, the obligations and rights of the parties are clearly established and preclude any claims by Quintiles as a purported subrogee to Envoy's rights. (Doc. No. 84.) Consequently, Quintiles' counterclaim for declaratory relief cannot survive and will be dismissed in its entirety.

## IV. CONCLUSION

For the reasons set forth above and for good cause shown, the Court hereby grants Plaintiff/Counter-Defendants' Motion to Dismiss and dismisses all counterclaims. An appropriate Order will follow.

_____
Judge Thomas A. Wiseman, Jr.
Senior United States Court Judge